IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BRUCE NILES MOORE,<br><br>Plaintiff,<br><br>vs.<br><br>JO ANNE B. BARNHART, Commissioner of<br><br>Social Security,<br><br>Defendant. | **REPORT & RECOMMENDATION**<br><br>Case No: 2:04-CV-221 TC<br><br>District Judge Tena Campbell<br><br>Magistrate Judge David Nuffer |

Plaintiff Bruce Niles Moore filed suit seeking judicial review of the decision of the Commissioner denying his application for supplemental security income (SSI) benefits under Title XVI of the Social Security Act.[1]  The case was referred to the magistrate judge under 28 U.S.C. § 636(b)(1)(B).  After a careful review of the entire record and the parties' submissions, the magistrate judge concludes that the decision of the Commissioner should be affirmed.

## PROCEDURAL HISTORY

Moore applied for benefits on December 18, 2001[2] alleging that he became unable to work on November 1, 2001[3] due to arthritis of the knees, back, and hands. [4]  Moore's application

[1]42 U.S.C. §§ 1381-1383f.

[2]Application, R. at 144-47.  "R" refers to the administrative record.

[3]Moore apparently alleged a number of different onset dates.  The ALJ adopted November 1, 2001 as the onset date based on Moore's testimony at the administrative hearing.  (See ALJ's Decision, R. at 45.)

[4]R. at 170.

was denied initially,[5] and on reconsideration.[6]  Moore then obtained a hearing before an

Administrative Law Judge (ALJ) which was held March 19, 2003.[7]  In a written decision, the

ALJ determined that Moore was not eligible for SSI benefits because he was capable of

performing jobs that exist in significant numbers in the national economy.[8]  The Appeals Council

denied Moore's request for review of the ALJ's decision after reviewing additional evidence

submitted by Moore.[9]  Moore then asked the Appeals Counsel to reconsider his appeal.[10]  The

Appeals Counsel construed this as a request to reopen the decision and denied it as untimely,

making the ALJ's decision the final decision of the Commissioner.[11]

## SUMMARY OF EVIDENCE

**A.  Evidence at the Administrative Hearing**

**1.  Moore's Testimony**

Moore testified that he had experienced several injuries over the years to his knees, back,

shoulder, and wrists.  As a result, he suffers from pain which prevents him from working.[12]  In

1994, he had surgery on his shoulder and knee.  The knee surgery was just a "temporary fix,"

---

[5]R. at 131-33.

[6]R. at 123-25.

[7]A transcript of the hearing may be found in the record at pages 217-55.

[8]Decision, R. at 52.

[9]R. at 11-12.

[10]R. at 5.

[11]R. at 3-4.

[12]R. at 221, 223-24.

according to Moore, and his condition will get worse over time.[13]  He also stated that his

condition is worse in wet weather.[14]

      Regarding his physical limitations, Moore can sit for about half an hour at a time, stand

for about thirty minutes, and walk for about fifteen minutes.  It is easier to walk on dirt than

concrete, and he needs good footwear.[15]  He has trouble with stairs,[16] and reaching overhead.[17]  He

agreed with his doctor that on average, he can lift twenty pounds constantly.[18]  He can lift a

twelve-pack of soda, but he can't carry it.[19]  He has a problem with his wrists that limits his

typing to five or ten minutes at a time.  He can feed himself, dress himself, and comb his own

hair.[20]  He can write down a recipe or a list, but he can only write five minutes at a time.[21]  He

cannot drive more than half an hour at a time due to problems with falling asleep at the wheel.[22]

      On the day before the hearing which was a typical day for Moore, he got up at 5:00 a.m.,

took his medication, and started a fire in his wood-burning stove.  He did some legal work on his

---

[13]R. at 224-25.

[14]R. at 226-27.

[15]R. at 227-29.

[16]R. at 226-27.

[17]R. at 229, 230.

[18]R. at 229-30.

[19]R. at 230-31.

[20]R. at 231.

[21]R. at 231-32.

[22]R. at 232-33.

computer, working in half-hour to forty-five minute intervals with breaks in which he would walk around for about ten minutes.[23]  He also took a couple of breaks where he sat down in a recliner and put his legs up, which helps when his legs hurt.[24]  He worked on the computer for a total of two to three hours.[25]  In the afternoon, he spent most of the time with his feet up watching television.  He prepared a meal by warming up some food in the oven.[26]  He did not do any housework, or clean up the dishes after his meal.  He explained that he has trouble doing dishes because of his back[27]  The only time he left the house that day was when his mother drove him to the mailbox to get the mail which took about half an hour.  He went to bed about 10:30 p.m.[28]

On a scale of zero to ten, he rated his pain on the day before the hearing as averaging five or six.[29]  At the time of the hearing, it was four or five.[30]  On the day before the hearing, Moore took Lodine for pain.  He testified that he tries to limit his pain medication to Lodine because his doctor is concerned about his becoming addicted to other pain medications.  Moore stated that Lodine is an anti-inflammatory and pain medication, but really does not do a whole lot for pain.  When he has a bad pain day, he takes hydrocodone.  The last time he took hydrocodone was two

---

[23]R. at 233-35.

[24]R. at 236.

[25]R. at 235.

[26]R. at 236.

[27]R. at 236-37.

[28]R. at 237.

[29]R. at 237.

[30]R. at 238.

days before the hearing.[31]  When asked about the side effects of his medication, Moore stated that

he soon would have to discontinue the Lodine because it gives him heartburn so that he can

hardly eat anything.  Also, Aleve gives him headaches so that he can't function.[32]

In answer to a question whether he had required any help on the day before the hearing,

Moore stated that his son had helped him bring wood into the house.  He indicated that he was

capable of doing it himself, but it was easier for his son.[33]

Moore had served a prison sentence, and was released on December 18, 2001.  He stated

that while he was in prison, he did not have any prison jobs because he was unable to do them.[34]

Moore is able to read and write.[35]

### 2. Testimony of the Vocational Expert

A vocational expert (VE) testified that all of Moore's past relevant work was as a

roughneck which falls under the job title of rotary driller helper.  It is heavy, semi-skilled work.[36]

The ALJ asked the VE a series of questions concerning a hypothetical person of Moore's

age, education, and work experience who could lift ten to twenty pounds; sit about thirty minutes

at a time for a total of five to six hours in an eight hour day; stand or walk about thirty minutes

for a total of five to six hours in an eight-hour day; who must have a sit/stand option so he could

---

[31]R. at 239.

[32]R. at 239-240.

[33]R. at 240.

[34]R. at 242.

[35]R. at 244.

[36]R. at 246.

move about every fifteen minutes or so; who could not do any significant stooping, bending,

squatting, or twisting; would be limited to only occasional handling, reaching, and fingering;

could not do any stair climbing except for a few steps; could do no significant overhead lifting or

reaching; must have the option while seated to elevate his legs at chair height; must have plenty

of room at his workstation to stretch out his legs; must have even ground to walk on; and must

have the option of wearing good footwear.[37]

The VE testified that such a person would not be able to do Moore's past relevant work.

But he would be able to do other jobs that exist in the national economy such as surveillance

systems monitor, dowel inspector, and telephone quotation clerk, all of which are sedentary,

unskilled jobs.[38]  If the hypothetical person missed three or four days of work each month or if his

work performance was 25% below average on three or four days each month, he would not be

able to perform the jobs.[39]

Moore asked how the fact of his being a convicted felon would affect the jobs.  The VE

testified that he would be prevented from doing the surveillance systems job, and a portion of the

telephone quotation clerk jobs.[40]  The ALJ then asked the VE to identify additional jobs taking

into consideration that the hypothetical person was a convicted felon.  The VE stated that he

---

[37]R. at 248-49.

[38]R. at 249-50.

[39]R. at 250-51.

[40]R. at 251.

would be able to do the jobs of semiconductor bonder, and touch up screener, which are both sedentary, unskilled jobs.[41]

**B.  Medical Evidence**

    **1.  Charles P. Bean, M.D.**

On February 18, 2002, Dr. Bean noted that Moore had been out of incarceration for about two months, and was at his office for welfare forms.  Moore was experiencing persistent back pain which was exacerbated by bending, standing, twisting, and lifting.  Moore also had bilateral knee pain, with the left worse than the right.  Dr. Bean noted that Moore had ACL reconstruction on the left knee in about 1974, and a scope on the right in 1994.  He also had a scope in 1988 and 1990.[42]

On examination, both knees were tender over the medial lateral joint line, and barely came to full extension.  However, they had a full range of motion with no instability.  X-rays showed three staples in the left knee, slight irregularity in the medial joint line, small intercondylar notch osteophytes, and superior patellar osteophyte.  The right knee had an irregularity in the patellar area.[43]

Examination of the back revealed tenderness of the mid-thoracic spine as well as tenderness in the lumbosacral junction.  Moore had obvious dorsal kyphosis.  Heel and toe gait was normal.  X-rays showed osteophytes from T-9 through L-1.[44]

---

[41]R. at 251-52.

[42]R. at 183.

[43]R. at 183.

[44]R. at 183.

Dr. Bean's impression was "Lumbar disc degeneration, thoracic multilevel disc degeneration, DJD, left knee, status post ACL reconstruction, DJD patellofemoral compartment bilateral."[45]  Dr. Bean faxed an insurance form to Moore's welfare worker stating that Moore was "on lifting restrictions of approximately 10 pounds constant and 20 pounds intermittent."[46]

A letter from Dr. Bean to Moore, dated September 11, 2002, apparently written in support of Moore's disability claim, stated that Dr. Bean had treated Moore's knee and back condition for many years.  Dr. Bean anticipated continued treatment "with anti-inflammatory agents, back braces, intermittent physical therapy."[47]

On December 4, 2002, Dr. Bean noted that Moore had grating, grinding, and popping in his knee, but no locking, catching, giving way, or swelling.  His maximum ambulation was 100-200 yards.  Dr. Bean noted that Moore could not take Aleve because of headache and stomach upset, and he planned to try two weeks each of Lodine, Voltaren, Celebrex, and Bextra.[48]

**2.  Ross M. Phillips, M.D.**

Dr. Phillips submitted an x-ray report dated February 18, 2002.[49]  Regarding the thoracic spine, Dr. Phillips' impression was "accentuated thoracic kyphosis," and "degenerative narrowing of some intervertebral discs."[50]  X-ray of the lumbar spine was normal.  X-rays of the

---

[45]R. at 183.

[46]R. at 183.

[47]R. at 196.

[48]R. at 198.

[49]Dr. Phillips' report presumably is based on the same x-rays upon which Dr. Bean based his opinion.

[50]R. at 184.

knees showed a normal right knee, and evidence of a repair of the medial collateral ligament of the left knee.[51]

### 3.  Division of Disability Determination Services (DDS)

Residual Functional Capacity Assessments completed by DDS physicians on March 6, 2002, and May 17, 2002, based on a review of Moore's medical records, concluded that Moore is capable of performing light work.[52]

### 4.  Evidence Presented to the Appeals Council

A Workplace Functional Ability Medical Report Form completed by Dr. Bean on March 10, 2003, indicates that Moore suffers from degenerative joint disease of both knees, and the thoracic and lumbar spine.[53]  On the form's "functional ability profile level," Dr. Bean gave Moore a rating of 5 for limitations related to musculoskeletal impairments of his lower extremities and spine.[54]  This translates to the ability to lift twenty pounds occasionally and ten pounds frequently.[55]  In response to a question on the form as to when Moore would be able to return to work activities, Dr. Bean wrote, "Never."[56]  The form asked Dr, Bean to a comment on any possible workplace accommodation that may need to be addressed.  Dr. Bean wrote, "Severe

---

[51]R. at 184.

[52]R. at 185-95.

[53]R. at 26.

[54]R. at 26.

[55]See Profile and Work Activity Guide, R. at 30

[56]R. at 27.

back & leg pain, severe knee pain (bilateral), DJD knees."[57]  Dr. Bean recommended treatment with Lodine.[58]

In a letter dated August 11, 2003, Dr. Bean stated that he last examined Moore on July 10, 2003.  At that time, an EMG showed that Moore had "ulnar nerve entrapment on both elbows."[59]  In addition, Moore was being treated for chronic knee pain with early degenerative arthritis of the left knee, degenerative arthritis of the right wrist, chronic back pain with chronic disc degeneration in the low back.  Dr. Bean was treating these problems with "anti-inflammatory agents, exercises, home physical therapies."[60]

## DISCUSSION

### A.  Legal Standard

Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[61]  The Act further provides that an individual shall be determined to be disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot,

---

[57]R. at 27.

[58]R. at 27.

[59]Letter from Dr. Bean to DDS, R. at 22.

[60]*Id.*

[61]42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."[62]

A person seeking Social Security benefits bears the burden of proving that because of his disability, he is unable to perform his prior work activity.[63]  Once the claimant establishes that he has such a disability, the burden shifts to the Commissioner to prove that the claimant retains the ability to do other work and that jobs which he can perform exist in the national economy.[64]

The Commissioner's decision must be supported by substantial evidence.[65]  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[66]  Evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.[67]

The Commissioner's findings of fact, if supported by substantial evidence, are conclusive upon judicial review.[68]  In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its judgment for that of the agency.[69]  However, the court should carefully

---

[62]42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

[63]*Miller v. Chater*, 99 F.3d 972, 975 (10th Cir. 1996); *Nielson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993).

[64]*Saleem v. Chater*, 86 F.3d 176, 178 (10th Cir. 1996); *Miller*, 99 F.3d at 975.

[65]*Daniels v. Apfel*, 154 F.3d 1129, 1132 (10th Cir. 1998); *Hinkle v. Apfel*, 132 F.3d 1349, 1351 (10th Cir. 1997).

[66]*Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[67]*Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992); *Emory v. Sullivan*, 936 F.2d 1092, 1093 (10th Cir. 1991).

[68]42 U.S.C. §§ 405(g), 1383(c)(3); *Perales*, 402 U.S. at 390.

[69]*Hinkle*, 132 F.3d at 1351; *Decker v. Chater*, 86 F.3d 953, 954 (10th Cir. 1996).

examine the record and review it in its entirety.[70]  Failure of the Commissioner to apply the

correct legal standard is grounds for reversal.[71]

     The Commissioner has established the following five-step process for determining

whether a person is disabled:

> (1)      A person who is working is not disabled.  20 C.F.R. § 416.920(b).

> (2)      A person who does not have an impairment or combination of
> impairments severe enough to limit his ability to do basic work
> activities is not disabled.  20 C.F.R. § 416.920(c).

> (3)      A person whose impairment meets or equals one of the
> impairments listed in the "Listing of Impairments," 20 C.F.R. §
> 404, subpt. P, app. 1, is conclusively presumed to be disabled.  20
> C.F.R. § 416.920(d).

> (4)      A person who is able to perform work he has done in the past is not
> disabled.  20 C.F.R. § 416.920(e).

> (5)      A person whose impairment precludes performance of past work is
> disabled unless the Secretary demonstrates that the person can
> perform other work available in the national economy.  Factors to
> be considered are age, education, past work experience, and
> residual functional capacity.  20 C.F.R. § 416.920(f).[72]

## B.  The ALJ's Decision

     The ALJ performed the sequential analysis, finding as follows:  (1) Moore has not

engaged in substantial gainful activity since the alleged onset of disability; (2) he has severe

impairments including "'severe' patellar osteophytes with retained staples bilaterally, and

---

[70]*Musgrave*, 966 F.2d at 1374; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

[71]*Daniels*, 154 F.3d at 1132; *Hinkle*, 132 F.3d at 1351.

[72]*Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

osteophytes at T9-L1;" (3) he does not have an impairment or combination of impairments that meet or equal the listings; (4) he is unable to perform his past relevant work; but (5) he is capable of performing jobs that exist in significant numbers in the national economy.[73]  Examples of jobs that the ALJ found Moore could perform include "dowel inspector, telephone quotation clerk, touch-up screener jobs, semi-conductor bonder, surveillance system monitor."[74]  Based on these findings, the ALJ concluded that Moore was not disabled as defined by the Social Security Act.[75]

In support of his disability claim, Moore argues that the (1) the ALJ's decision is not supported by the evidence; (2) the ALJ's credibility determination is erroneous; (3) ALJ should have obtained additional medical records; and (4) the ALJ should have found Moore disabled based on findings of the state employment agency.  Because Moore is proceeding pro se, the court construes his pleadings liberally.[76]

## C.  The ALJ's Decision Is Supported by Substantial Evidence in the Record

In reviewing the ALJ's decision, this court is limited to considering (1) whether the ALJ's decision is supported by substantial evidence, and  (2) whether he applied the correct legal standards.[77]  As discussed, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[78]  It is "more than a scintilla, but less than a

---

[73]R. at 51-52.

[74]R. at 52.

[75]R. at 52.

[76]*Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003); *see Haines v. Kerner*, 404 U.S. 519, 520 (1972).

[77]*Decker*, 86 F.3d at 954; *Castellano v. Sec'y of HHS*, 26 F.3d 1027, 1028 (10th Cir. 1994).

[78]*Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co.*, 305 U.S. at 229).

preponderance."[79]  This court may neither reweigh the evidence, nor substitute its judgment for that of the agency.[80]  "If supported by substantial evidence, the [Commissioner's] findings are conclusive and must be affirmed.[81]

Moore has provided an extensive outline of his medical problems going all the way back to 1968.[82]  Moore seems to believe that this information will somehow substantiate his entitlement to SSI benefits.  The issue, however, is not whether Moore suffers from severe impairments.  As discussed above, the ALJ found that Moore does have severe impairments of the knees and back.  The ALJ concluded, however, that despite his impairments, Moore retained the residual functional capacity to perform jobs that exist in significant numbers in the national economy.

In February 2002, Dr. Bean stated that Moore could lift ten pounds constantly and twenty pounds intermittently.[83]  At the hearing, the ALJ asked Moore if he agreed with his doctor concerning the twenty-pound lifting restriction.  Moore stated that it was probably "an average mean."[84]  He further stated that he could lift a twelve-pack of soft drinks weighing about ten

---

[79]*Sorenson v. Bowen,* 888 F.2d 706, 710 (10th Cir.1989); *Sisco v. U.S. Dep't of HHS*, 10 F.3d 739, 741 (10th Cir.1993).

[80]*Decker*, 86 F.3d at 954; *Casias v. Sec'y of HHS*, 933 F.2d 799, 800 (10th Cir.1991).

[81]*Sisco*, 10 F.3d at 741; *Richardson*, 402 U.S. at 390.

[82]Moore's "Argument (in general) in lieu of brief' ("Moore's Supporting Memorandum") at 3-8, docket no. 23, filed May 5, 2005.

[83]R. at 183.

[84]R. at 229-30.

pounds.[85]  Thus, the ALJ's finding that Moore could lift ten to twenty pounds[86] is supported by

Dr. Bean's notes and Moore's testimony.  Similarly, the ALJ's other findings concerning

Moore's abilities such as the amount of time that he can sit, stand, and walk, his limitations in

reaching, stair climbing, twisting, bending, stooping, fingering, and his need for good footwear

and an even walking surface[87] are generally consistent with Moore's own testimony at the hearing

as to what he was capable of doing and his limitations.[88]  Thus, the ALJ's findings concerning

Moore's residual functional capacity (RFC) are supported by substantial evidence.

     Following Moore's testimony, the ALJ posed a hypothetical to the VE that incorporated

his findings.[89]  The VE responded with examples of jobs existing in the national economy that

could be performed by a person with Moore's limitations.[90]  The VE's testimony provided

substantial evidence to support the ALJ's finding that a significant number of jobs exist in the

national economy that Moore could perform.[91]

     Although Moore has not specifically raised any question regarding the evidence presented

to the Appeals Council, the court will briefly address the issue.  In the Tenth Circuit, evidence

---

[85]R. at 230-31.

[86]R. at 50.

[87]R. at 50.

[88]R. at 226-32.

[89]R. at 248-49.

[90]R. at 249-52.

[91]*Decker*, 86 F.3d at 955; *Ellison v. Sullivan*, 929 F.2d 534, 537 (10th Cir. 1990).

presented to the Appeals Council "becomes part of the administrative record to be considered when evaluating the [Commissioner's] decision for substantial evidence."[92]

The evidence submitted by Moore to the Appeals Council included a Workplace Functional Ability Medical Report Form completed by Dr. Bean.  In response to a question on the form, Dr. Bean indicated that Moore "never" would be able to return to work.[93]  However, another of Dr. Bean's responses on the form indicated that Moore had the ability to lift twenty pounds occasionally and ten pounds frequently[94] which is consistent with the ALJ's RFC assessment.  In stating that Moore would not be able to return to work, it is clear that Dr. Bean was referring to Moore's past relevant work as a roughneck which is classified as heavy work.  Thus, this piece of evidence does not undermine the ALJ's decision.

**D.  ALJ's Credibility Determination**

According to Moore, his pain is the primary reason that he is unable to work.[95]  As the Tenth Circuit has observed, the evaluation of pain allegations "ultimately and necessarily turns on credibility."[96]  "Credibility determinations are peculiarly the province of the [ALJ]," and will not be disturbed if supported by substantial evidence.[97]  However, credibility findings must be

---

[92]*Blea v. Barnhart*, 466 F.3d 903, 908 (10th Cir. 2006)(quoting *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994)).

[93]R. at 27.

[94]R. at 26, 30.

[95]R. at 221, 223, 241.

[96]*White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001), as amended on denial of rehearing, April 5, 2002.

[97]*Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005)(quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)).

"closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."[98]

The Tenth Circuit has listed several factors that should be considered in evaluating allegations of pain:  (1) extensiveness of attempts to find relief from pain; (2) willingness to try prescribed treatment; (3) regular contact with a doctor; (4) the claimant's daily activities; (5) the dosage, effectiveness, and side effects of medication; (6) and the consistency or compatibility between the objective medical evidence and the nonmedical testimony.[99]

The ALJ found Moore's allegations of pain and other symptoms not credible.  In support of his credibility determination, the ALJ noted that Moore "makes minimal use of prescribed medication.  In general, his use of medication is quite limited for someone who is alleging that pain prevents all work activity."[100]  The ALJ acknowledged that Moore experiences some "minimal side effects" from his medications, but found that those side effects were mild and would not interfere in any significant way with Moore's ability to perform work activities.  The ALJ noted that Dr. Bean indicated that Moore could lift ten pounds constantly and twenty pounds intermittently, which suggested that Moore retains significant exertional function.  In addition, the ALJ observed that Moore was "able to live alone, do basic daily activities, operate a computer for extended periods, shop for groceries, build a fire and care for his personal needs."[101]

---

[98]_Hackett_, 395 F.3d at 1173 (quoting _Kepler_, 68 F.3d at 391).

[99]_Kepler_, 68 F.3d at 391; _Huston v. Bowen_, 838 F.2d 1125, 1132 (10th Cir. 1988); _Luna v. Bowen_, 834 F.2d 161, 165-66 (10th Cir. 1987).

[100]R. at 49.

[101]_Id._

Finally, he stated that "[a] review of the 45-year-old claimant's work history shows that he has not shown an interest in sustained and gainful employment at any time.  This raises a question as to whether the claimant's continuing unemployment is actually due to medical impairments."[102]

Moore takes issue with some of the findings underlying the ALJ's credibility determination.  First, he states that he does not live alone, but instead lives with his seventy-three-year-old mother.  He states that the primary reason for this living arrangement is so that he can have help when he cannot care for himself.[103]  Moore also seems to disagree with the ALJ's reliance on his daily activities such as building a fire and carrying firewood into the house as evidence of his ability to work.  He states that the fact that he spends a large portion of his time bringing firewood into the house is evidence of just how severe his arthritis really is.  He adds that there were times when his mother had to carry the wood because his back or his arthritis prevented him from doing so[104]

During the hearing, the ALJ questioned Moore extensively concerning his activities and capabilities.[105]  The fact that the ALJ may have incorrectly assumed that Moore lived alone is not material to his determination that Moore is capable of performing work existing in the national economy.  Further, Moore did not testify at the hearing that he needed help from his mother.  In fact, regarding his activities of the previous day, the ALJ specifically asked Moore if he had required any assistance from anyone.  Moore replied that his son had helped him bring in the

---

[102]*Id.*

[103]Moore's "Reply Argument (in general) in lieu of brief" ("Reply") at 1, docket no. 26, filed June 27, 2005.

[104]*Id.* at 2.

[105]R. at 225-42, 244-45.

firewood.  The ALJ then asked Moore if he could have brought in the wood himself.  Moore's

response indicated that he could have done it himself, but it was easier for his son because he

could get the wood in one trip.[106]

Moore also takes issue with the ALJ's characterization of his work history, and his use of

medications and their side effects.  He states that his current medications often are not enough for

him to be able to do anything significant such as household chores.  He further states that the

medications actually would prevent him from doing some of the jobs cited by the

Commissioner.[107]  Again, the ALJ asked Moore about his medications and their side effects at the

hearing.  Moore testified that the day before the hearing, he had taken Lodine, an anti-

inflammatory.  When he had a bad pain day, he took hydrocodone.  However, he tried not to take

it because it was expensive, and his doctor was concerned about addiction.[108]  The ALJ's findings

are consistent with Moore's answers.

Finally, Moore argues that he does not have a "spotty work history."  He states that he

worked on his farm, often trading the animals that he raised, instead of dealing in cash.  He also

states that he received worker's compensation benefits during certain periods.[109]  Moore

apparently offers this explanation to show why his earnings records might appear to indicate

sporadic work activity.  However, even disregarding the ALJ's assessment of Moore's work

history, the ALJ's credibility determination is still supported by substantial evidence.

---

[106]R. at 240.

[107]Reply at 2-3.

[108]R. at 239-40.

[109]Reply at 3-4.

The ALJ considered the factors suggested by the Tenth Circuit to be used in evaluating allegations of pain such as medication usage, side effects, daily activities, and the consistency between the objective medical evidence and nonmedical evidence.  Moore's arguments concerning the weight of the evidence and the ALJ's credibility determination are simply "an invitation to this court to engage in an impermissible reweighing of  the evidence and to substitute [its] judgment for that of the Commissioner, an invitation [the court] must decline."[110] The ALJ's credibility determination is entitled to great deference, and will not be disturbed where, as here, it is supported by substantial evidence.[111]

## D.  ALJ's Duty to Obtain Additional Medical Records

"It is beyond dispute that the burden to prove disability in a social security case is on the claimant."[112]  However, the ALJ has a responsibility to develop an adequate record consistent with the issues raised.[113]  In particular, an ALJ has the duty to obtain "pertinent, available medical records which come to his attention during the course of the hearing."[114]

In his written submissions, Moore seems to imply that the ALJ should have obtained medical records from the University of Utah Medical Center and the Utah Department of Corrections pertaining to the period of time that he was incarcerated.  Moore states that he is unable to obtain these records himself.  He further states that the records would provide evidence

---

[110]*Hackett*, 395 F.3d at 1173.

[111]*Id.*

[112]*Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).

[113]*Id.*

[114]*Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996).

of his inability to care for himself when his medications are withdrawn.[115]  As counsel for the

Commissioner points out, however, Moore did not inform the ALJ of his need for these records.

In fact, the ALJ specifically asked Moore if he had submitted all the records available in this

case.  Moore replied that he had some additional records coming in from the Uintah County

Hospital pertaining to the years 1968 and 1991.  The ALJ advised Moore that these records

would probably be irrelevant because they predated the alleged onset date.  Nevertheless, the ALJ

held the record open so that the Uintah County medical records could be received into evidence,

and they were later made a part of the record.[116]

        As discussed, Moore did not bring the existence of the medical records to the ALJ's

attention.  Thus, the ALJ did not err by failing to obtain them.  Furthermore, even if the records

at issue had been obtained, they would not have changed the outcome of Moore's claim.  Moore

alleges that the records would show that he was unable to care for himself without medication.  It

is well established that medical conditions that may be controlled by medication or other

treatment are not considered disabling for social security purposes.[117]  Therefore, the records

would be immaterial.

## F.  Conflict with Determination that Moore Was Not Entitled to Unemployment Benefits

        Moore argues that the ALJ should have found him to be disabled because the state office

of employment denied him unemployment benefits in August 1991 on the ground that he was

---

[115]Moore's Supporting Memorandum at 8-10; Reply at 5.

[116]R. at 219-22; see medical records, R. at 207-16.

[117]See, e.g., Kelley v. Chater, 62 F.3d 335, 337-38 (10th Cir. 1995).

injured and therefore unavailable for work.[118]  He states that "if I am unable to collect unemployment benefits because of my medical condition, then by the same token I am therefore elegible [sic] for these disability benefits, inasmuch as this condition has prevented me from working for several years."[119]  Moore's reasoning on this issue is flawed.

First, the state agency's finding that Moore's injury made him unavailable for work at the time he was seeking unemployment benefits is not the same as a finding of disability for social security purposes since the findings are based on different criteria.  Further, the alleged denial of benefits in August 1991 was more than ten years before Moore's alleged onset date of disability in this case which is November 1, 2001.  Moreover, it is well established that findings of other agencies as to disability, although they may be considered as evidence, are not binding on the Commissioner.[120]

### RECOMMENDATION

The Commissioner applied the correct legal standards, and his decision is supported by substantial evidence.  Accordingly, his decision should be affirmed.

Copies of this Report and Recommendation are being sent to all parties, who are hereby notified that they have the right to object to the same.  The parties must file any objections to the Report and Recommendation with the clerk of the district court, pursuant to 28 U.S.C. § 636(b),

---

[118]Moore's Supporting Memorandum at 2-3, 6, 11; Reply at 6.

[119]Moore's Supporting Memorandum at 2-3.

[120]See, e.g., Hackett 395 F.3d at 1172; Baca v. Dep't of HHS, 5 F.3d 476, 480 (10th Cir. 1993).

within ten days after receiving it.  Failure to file objections may constitute a waiver of those

objections on subsequent appellate review.

     February 22, 2007.

                    BY THE COURT:

                    _____

                    David Nuffer

                    U.S. Magistrate Judge